# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL NO. 13-0178-WS-C |
| FERNANDO GUARDIAN BLAS | : |

## ORDER

This cause is before the Court on the defendant's motion for hearing to clarify status and effect of release order (Doc. 22). Upon consideration of the contents of the motion, all other relevant pleadings in the record, and the comments of counsel, the Court, and Deportation Officer Joshua R. Graham at the September 17, 2013 hearing (*compare* Doc. 26 (order setting defendant's motion for a hearing) *with* Docket Sheet), this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(b)(2).

## FACTUAL BACKGROUND

This case, already complicated by the interplay between the Bail Reform Act and the Immigration and Nationality Act, has been further complicated by the activities of two coordinate agencies within the Executive Branch, that is, the United States Department of Justice and the United States Department of Homeland Security, as revealed below.

The undersigned issued a warrant for Fernando Blas' arrest on July 17, 2013, on the basis of a criminal complaint signed by ICE Deportation Officer Graham charging the defendant with violating 8 U.S.C. § 1326 on account of illegal reentry into this country after deportation or removal. (*Compare* Doc. 1 *with* Doc. 2.) Graham's affidavit

in support of the criminal complaint reads, in relevant part, as follows:

  2. On July 7, 2013, an individual then identified as Fernando Guardian BLAS, date of birth April 19, 1989, was arrested by the Foley, Alabama Police Department for Driving Under the Influence of Alcohol and Giving False Name/Address to Law Enforcement Officer. On or about July 7, 2013, the Foley, Alabama City Jail contacted the Mobile ICE/ERO office to inquire on the immigration status of BLAS. Subsequently[,] Immigration Enforcement Agent (IEA) *Scott Fondren placed an ICE detainer on BLAS due to his immigration status in the United States.*

  3. On July 10, 2013 IEA Fondren and I [] went to the Foley, AL City jail to obtain BLAS' fingerprints. Upon enrolling BLAS' fingerprints into an immigration and criminal database, a "removed alien" alert was received through the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS). The confirmation returned verifying that BLAS was in fact FERNANDO BLAS-Guardian, a/k/a Fernando Guardian BLAS, date of birth April 19, 1989, FBI# 692375CD3 . . . and Alien Registration Number AO88 931 547.

  4. A records check has been conducted in immigration databases and indicates no claims or petitions have been filed by BLAS or on his behalf which would allow him to enter, remain or be found in the United States legally. The Alien Registration Number [A]O88 931 547 . . . contains the following immigration and removal history: BLAS was ordered removed from the United States by an immigration judge in Oakdale, LA on or about February 25, 2009. Blas departed the United States through the Brownsville, Texas Port of Entry on or about March 23, 2009, as witnessed.

  5. A copy of the most recent Warrant of Removal was requested and received from the National Records Center located in Lee's Summit, Missouri which verified that BLAS is prohibited from entering, attempting to enter, or being in the United States for a Period of 10 Years from the date of his departure from the United States. The warning also stated that after his removal has been effected he must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States. . . .

  6. On July 10, 2013, IEA Fondren and I [M]irandized BLAS in the Spanish language and interviewed him. . . . During the interview, BLAS freely admitted to being a citizen and national of Mexico and to having illegally crossed the U.S.-Mexico border from Matamoros, Mexico

> into Texas in July of 2009. . . . ***BLAS was processed for reinstatement of the previous Order of Removal entered on February 25, 2009 in Oakdale, LA.***

(Doc. 1, Affidavit of Joshua R. Graham, at ¶¶ 2, 3, 4, 5 & 6 (emphasis supplied).) The arrest warrant was returned executed on July 18, 2013 (Doc. 4) and Blas made his initial appearance in this Court that same date (*see* Doc. 7). An order of temporary detention was entered as to Blas on July 18, 2013 (*see* Doc. 8), pending a detention hearing and preliminary examination scheduled for July 23, 2013 (*compare id. with* Doc. 7).

On the date previously set for the detention hearing and preliminary examination, that is July 23, 2013, the government filed its motion for pretrial detention pursuant to 18 U.S.C. § 3142(e) and (f). (*See* Doc. 10 (filed in open court).) The government's written motion specifically averred that the instant case was eligible for entry of a detention order because of a serious risk of flight and, further, that the Court should detain Blas because no condition or combination of conditions of release could reasonably assure his appearance as required. (*Id*. at 2.) Following the taking of evidence, the undersigned entered an order setting conditions of release—signed by Blas and his third-party custodian, Aileen Santamaria—disagreeing with the government's position and finding a combination of conditions of release that would reasonably assure Blas' presence at all future proceedings. (*See* Doc. 14.)

Although the government did not appeal the undersigned's release order (*see* Docket Sheet), Blas was never released as ordered inasmuch as the United States Marshal's Office retained defendant in custody until ICE could take him into custody based upon the detainer referenced above, which was filed with the United States Marshal's Office (*compare* Doc. 1, Graham aff., at ¶ 2 *with* Doc. 19, ¶ 2 *and* Doc. 26, at 1).

Indeed, Officer Graham's sworn testimony at the detention hearing was that if the Court ordered the defendant's release his agency would have no discretion but to have Blas "deported to Mexico within three days of his release[]" (Doc. 26, at 2 n.1),[1] a clear signal that the Executive Branch was opting to simply deport Blas, as opposed to prosecuting him for illegal reentry into the United States. Nevertheless, two days later, on July 25, 2013, Blas was charged by indictment with violating 18 U.S.C. § 1326(a) and (b)(2) by unlawfully reentering the United States, following deportation and removal, without obtaining the "consent of the Attorney General of the United States and the Secretary of the Department of Homeland Security for re-application by the defendant for admission into the United States." (Doc. 15.) And approximately one month later, on August 22, 2013, the government filed a petition for writ of habeas corpus *ad prosequendum* to return Blas—who was being held at the South Louisiana Detention Center in Basile, LA awaiting deportation—to this Court for proceedings related to the foregoing indictment. (*See* Doc. 18.) Concurrent therewith, the Assistant United States Attorney curiously filed a praecipe for warrant and indicated thereon that Agent

---

[1] Graham testified that Blas' case was a mandatory detention case, for agency purposes, such that if the Court ordered the defendant's release on conditions, ICE would take him into custody and deport him. More specifically, Graham stated that if Blas was ordered released, he (Graham) would take him into custody, Blas would be placed in a Baldwin County facility for 72 hours, and then deportation officials from Louisiana would come to Alabama and take him to Louisiana for deportation. According to Graham, since ICE could not impede Blas' rights to due process and the defendant, a Mexican national, had previously been deported in 2009, he would be deported within two weeks since the order reinstating his removal had already been signed. Officer Graham's only qualification to this testimony was that if Blas requested political asylum, the government would not be able to deport the defendant within this two-week period.

4

Graham should be contacted when the warrant was ready to be picked up. (Doc. 17.)[2] Although defense counsel filed an objection to the government's petition for writ of habeas corpus on August 23, 2013 (*see* Doc. 19), the government's petition was granted by United States Magistrate Judge Sonja F. Bivins that same date (Doc. 21) and a warrant issued for Blas' arrest on the indictment (Doc. 20).[3] The order granting the petition set forth that Blas' arraignment was scheduled for September 18, 2013, at 2:00 p.m. (Doc. 21.) Blas initially appeared before United States Magistrate Judge Kathleen Kay in the Western District of Louisiana on August 29, 2013, at which time he was committed to this district. (*See* Doc. 24.)

On August 29, 2013, counsel for Blas filed a motion for hearing to clarify status and effect of release order. (Doc. 22.) "The writ of habeas corpus orders that the detainee will be retained in federal custody from initial appearance through final disposition of federal charges in contradiction to the Court's prior order releasing Mr. Guardian-Blas from federal custody. As such, a hearing is requested to address and resolve the conflicting orders of the Court." (*Id*. at 2.) The undersigned did not set this matter down for a hearing until September 11, 2013 (Doc. 26), and during the interim counsel for the defendant appealed the granting of the government's petition for writ of habeas corpus (Doc. 25). The order setting this matter for a hearing on defendant's

---

[2] The undersigned can discern no reason why the United States Attorney's Office (an arm of the Attorney General and an agency within the Executive Branch) would insist upon obtaining an arrest warrant for an individual who had already been arrested on the same charge and who was in the custody of another Executive Branch agency (ICE).

[3] This warrant was returned on August 30, 2013, as having been executed on August 28, 2013. (*See* Doc. 23.)

motion to clarify status and effect of release (Doc. 22) reads, in relevant part, as follows:

> The Defendant was released on conditions on July 23, 2013 but apparently was taken into custody by an enforcement officer of the United States Department of Immigration and Customs upon his release for the expressed purpose of being deported even though criminal proceedings were pending. Since that time it appears that the Defendant has not been deported but has been detained by an agent of the Attorney General outside the jurisdiction of this Court – a detention center in southwest Louisiana. Under these circumstances, the United States Attorney considered it necessary to again seek a court order for his appearance rather than simply having him produced from within the Executive Branch of Government.
>
> Given the progression of this action, it is understandable that Defendant's attorney is confused as to the custody status of his client. The Court will explore with the United States the status of any pending deportation proceedings. It is requested that someone having knowledge of existing administrative proceedings appear during the hearing. The assigned Probation Officer shall also provide an updated Pretrial Report on Mr. Blas.
>
> It will be very important to determine if the Defendant was detained without bond after a civil proceeding within ICE when this Court had previously determined that the Defendant did not pose a risk of flight or danger to the community that would prevent his release under appropriate conditions of release. The Court's decision was made after a judicial hearing pursuant to the Bail Reform Act wherein the Defendant had the services of an attorney but it cannot be determined if he had a similar administrative hearing or was provided the assistance of counsel.

(Doc. 26, at 1-2.)

During the hearing on September 17, 2013, the government conceded that the Court ordered Blas' release on July 23, 2013; however, it argued that it could consistently follow the dual paths of prosecution and deportation and that but for Blas making a request for asylum, the defendant would have been deported after ICE took custody of him following entry of the July 23, 2013 release order. Indeed, Deportation Officer Graham reiterated his testimony at the July 23, 2013 detention hearing that

6

under INA regulations, Blas was subject to mandatory detention because of his unlawful reentry into this country without permission.[4] However, the detention Graham references is administrative detention under the INA, not detention under the Bail Reform Act, and since the government had engineered Blas' return to this district for criminal prosecution—now on an indictment—and made no attempt to appeal the July 23, 2013 release order properly entered under the Bail Reform Act, the release order remains valid and controls disposition of the custody issue such that Blas was ordered to be released immediately (on September 17, 2013) by the Marshal's Service into the custody of his attorney. In other words, the Secretary of Homeland Security has some discretion in these cases to either deport the defendant or prosecute him but once the Secretary opts for prosecution over deportation—as is clear in this case—and invokes the jurisdiction of this Court, this Court has priority or first standing and administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end. As a result, while the aftermath of what happened to Mr. Blas following the July 23, 2013 detention hearing was confusing, in part because the Court's position on the matter was not well-settled, such that the undersigned is unwilling to find that ICE deliberately violated the July 23, 2013 release order, the government and Deportation Officer Graham were advised that should ICE attempt to

---

[4] This is because, as underscored by Officer Graham, as an illegal "reentrant," Blas was entitled to no deportation hearing before an immigration administrative law judge and was subject to deportation based upon the signing of the order reinstating his removal of February 25, 2009. See 8 U.S.C. § 1231(a)(5) ("If the Attorney General [or now, of course, the Secretary of Homeland Security] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.").

take Blas into administrative custody following his September 17, 2013 release, that action would be considered a violation of the two orders of this Court and a contempt hearing would be necessary.

## **CONCLUSIONS OF LAW**

This case causes the Court to consider the interplay of two different laws, the Bail Reform Act of 1985, as amended, 18 U.S.C. § 3141, *et seq.*, and the Immigration and Nationality Act of 1965, 8 U.S.C. § 1101, *et seq.*, as presaged by Deportation Officer Graham's testimony at the defendant's July 23, 2013 detention hearing,[5] and the government's filing of a motion pursuant to 18 U.S.C. § 3142(e) and (f) (Doc. 10).

    A.    **The Bail Reform Act of 1984**.   The Bail Reform Act specifically provides that a person charged with an offense is to be released unless "detained under subsection (e) of this section." 18 U.S.C. § 3142(a)(4).[6] In turn, subsection (e) provides

---

[5] Graham testified that his primary job responsibilities as a deportation officer with ICE revolve around the identification, arrest and removal of illegal aliens. ICE, of course, is the acronym for the Bureau of Immigration and Customs Enforcement, part of the United States Department of Homeland Security, which is the primary government agency "responsible for the removal and deportation of aliens who have no lawful right to be in the United States." *United States v. Trujillo-Alvarez,* 900 F.Supp.2d 1167, 1169 (D. Or. Oct. 29, 2012).

[6] Subsection (a)(3) (temporary detention to permit deportation under subsection (d) of § 3142) and subsection (d) (where the person is not lawfully admitted to the United States for permanent residence and may flee or pose a danger to the community, he may be temporarily detained for a 10-day period pending notification by the attorney for the government to the appropriate official of ICE and "[i]f the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.") were never applicable to Blas' case since, in the first instance, the defendant was arrested based on the criminal complaint affidavit supplied by ICE Deportation Officer Graham. *Cf. United States v. Adomako,* 150 F.Supp.2d 1302, 1307 (M.D. Fla. 2001) ("The Court could have ordered Adomako temporarily detained for not more than ten days, and could have directed the attorney for the government to notify the appropriate INS official. However, when the matter first came to the undersigned duty magistrate judge's attention, the INS already knew of his arrest and the

8

that "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial[,]" 18 U.S.C. § 3142(e), and subsection (f)(2) provides, as applicable here, that a detention hearing is required upon motion of the government in a case involving a serious risk that the defendant will flee, 18 U.S.C. § 3142(f)(2)(A).[7] It is not surprising, therefore, that in accordance with subsections (e) and (f), the government moved for Mr. Blas' detention. (Doc. 10.)[8] And, on July 23, 2013, the undersigned conducted a hearing and heard evidence regarding whether Mr. Blas, indeed, was a flight risk since the government at no time argued that Mr. Blas presented a danger to the safety of any other person or the community. *Cf. United States v. Marinez-Patino,* 2011 WL 902466, *3 (N.D. Ill. Mar. 14, 2011) ("When (as here) the safety of the community is not at issue, a court must first determine whether the government has shown, by a preponderance of

---

parties were prepared for a dispositive detention hearing. Therefore, as directed by Congress in 18 U.S.C. § 3142(d), this Court properly applied the normal release and detention rules to the deportable alien without regard to the laws governing release in INS deportation proceedings."). In other words, there was no reason for notification because "the appropriate official," as set forth in subsection (d) of section 3142 was the very person who brought Blas to the attention of the attorney for the government and engineered his arrest on the criminal complaint. Of course, the government's motion for detention was made pursuant to subsections (e) and (f) of 3142, in recognition of the inapplicability of subsection (d).

[7] No subsection (f)(1) ground existed (or exists) for detention in this case. *See* 18 U.S.C. § 3142(f)(1)(A)-(E).

[8] The government took such action in recognition of the fact that "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *Adomako, supra,* 150 F.Supp.2d at 1304, citing 18 U.S.C. § 3142(a)(3) and (d).

the evidence, the existence of a serious risk that the defendant will flee."). As aforesaid, the undersigned determined after hearing evidence—including that the defendant was not charged with a violent offense or was exposed to an extensive prison sentence, lives with his two children (U.S. citizens), wife, and brother in Foley, Alabama—that there existed a combination of release conditions (including home detention with electronic monitoring) which the Court could impose to ensure the defendant's presence at all future proceedings in this Court, even giving consideration to ICE's administrative detainer and Blas' immigration status.[9] *Compare United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception.") *with United States v. Byrd,* 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors non[-]detention."); *United States v. Sanchez-Martinez,* 2013 WL 3662871, *5 (D. Colo. Jul. 12, 2013) ("The Bail Reform Act favors pretrial release of defendants . . . and '[t]he court must resolve all doubts

---

[9] The administrative detainer lodged by ICE was a factor taken into consideration regarding risk of flight; however that detainer did not presumptively establish the appropriateness of detention. *Compare, e.g., United States v. Salas-Urenas,* 430 Fed.Appx. 721, 723 (10th Cir. 2011) (declining to resolve the issue of whether pretrial detention is properly based solely on a defendant's immigration status or an ICE detainer because that situation was not before the court) *with United States v. Morales,* 2012 WL 603520, *2 (D. Kan. Feb. 24, 2012) ("[T]he existence of [an] ICE detainer is not in and of itself sufficient grounds to find that a defendant poses a risk of flight[.]"); *Marinez-Patino, supra,* at *6 n.3 ("[W]e recognize th[e ICE detainer is a] factor [] relevant in assessing the risk that the defendant will flee. . . . But here, the government has not argued that this factor, taken together with the consideration[]s set forth in Section 3142(g), show that there are no conditions or combination of conditions that would reasonably assure against any flight risk. The government instead seeks detention based solely on the existence of the ICE detainer, a request that we deny[.]"); and *United States v. Montoya-Vasquez,* 2009 WL 103596, *5 (D.Neb. Jan. 13, 2009) ("If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.").

regarding the propriety of release in the defendant's favor.'"); and *Marinez-Patino, supra,* at *3 ("This process reflects the congressional judgment in the BRA that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (citation omitted)). The undersigned entered such release order on July 23, 2013 (Doc. 14) and because the government never appealed that order, something (in the undersigned's experience) the government has never been shy about doing, that order is valid, controlling, and reaffirmed, particularly in light of the fact that Blas has now been brought back into the Southern District of Alabama to stand trial on the illegal reentry charge pursuant to 8 U.S.C. § 1326(a) and (b)(2).

B. **The Immigration and Nationality Act ("INA")**. "The Immigration and Nationality Act of 1965, as amended, 8 U.S.C. § 1101, *et seq.,* . . . charges the U.S. Secretary of Homeland Security with 'the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, [or] Attorney General . . . .'" *Trujillo-Alvarez, supra,* 900 F.Supp.2d at 1174, quoting 8 U.S.C. § 1103(a)(1). The INA also provides "for the detention and removal of aliens who are ordered removed[,]" *id.,* citing 8 U.S.C. § 1231, and specifically provides that the Attorney General (now the Secretary of Homeland Security) shall remove an alien ordered removed within a period of 90 days, which begins "on the *latest* of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the

alien *is detained or confined* (except under an immigration process), the date the alien is *released from detention or confinement*." 8 U.S.C. § 1231(a)(1)(A) & (B) (emphasis supplied).

The undersigned is in complete agreement with the court in *Trujillo-Alvarez* that "[a]lthough the statutory phrase 'released from detention or confinement' is not defined, in the context of the entirety of Section 1231 the most reasonable interpretation of that phrase is that it refers to release from incarceration pursuant to a final judgment of conviction as entered by a court of competent jurisdiction[,]" particularly since "a person who has been released subject to conditions of pretrial supervision is still 'confined' because [he is] subject to restraints not shared by the public generally that significantly confine and restrain [his] freedom." 900 F.Supp.2d at 1174 & 1175 (citations omitted).[10] Thus, as in *Trujillo-Alvarez*, the 90-day period of removal for Blas has not yet commenced and "there is no legal requirement, or even any practical necessity, that ICE detain [Blas] in order to remove and deport him before the pending criminal proceedings can be concluded." 900 F.Supp.2d at 1175. This conclusion is particularly apt in this case, even in the face of a deportation officer's ability—pursuant to regulations created under the statutory authority of 8 U.S.C. § 1103(a)(3) ("[The Secretary of Homeland Security] shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter.")—to issue an ICE detainer, *see* 8 C.F.R. § 287.7(a) ("Any authorized

---

[10] This is particularly true where, as here, the defendant is on home detention with electronic monitoring and is prohibited from seeking employment. (*See* Doc. 14, at 3.)

immigration officer may at any time issue a Form I-247, Immigration Detainer—Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible."), inasmuch as "the purpose of an ICE detainer is for 'arresting and removing the alien[]'" but may not be utilized "for the purpose of avoiding the pretrial release provisions of the BRA." *Trujillo-Alvarez, supra,* 900 F.Supp.2d at 1176.

C. **The "Upshot" of the Interplay Between the Bail Reform Act and the INA in this Case.** Deportation Officer Graham's continued insistence at the hearing on September 17, 2013 that Blas would have to be taken into ICE custody again based on the detainer since Blas is subject to mandatory detention due to his unlawful reentry into this country without permission is wrong on two levels. First, to the extent this argument is no more than a restatement of the argument that there is an "ICE detainer" exception to the Bail Reform Act, such argument has been rejected by numerous courts to have addressed the issue, and is likewise rejected by the undersigned. *Trujillo-Alvarez,*900 F.Supp.2d at 1176-1178, quoting, *e.g., United States v. Barrera-Omana,* 638 F.Supp.2d 1108, 1111 (D.Minn. 2009) ("'[T]he government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be. . . . If the Court accepted the government's argument, Congress's

13

carefully crafted detention plan, set forth [in the Bail Reform Act] at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer."); and *United States v. Montoya-Vasquez*, 2009 WL 103596, *5 (D. Neb. Jan. 13, 2009) ("'If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act. . . . If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not."); *see also Sanchez-Martinez, supra*, at *4 ("Notwithstanding the fact that ICE took the initiative to notify the United States Attorney's Office of Mr. Sanchez-Martinez's status and apparent violation of 8 U.S.C. § 1326(a) and (b)(2), thereby triggering the instant prosecution, the government now argues that ICE will knowingly frustrate that prosecution by removing Mr. Sanchez-Martinez from the United States 'prior to the completion of his case.' I am not convinced that the government's position is consistent with the Bail Reform Act, 18 U.S.C. § 3142, the Immigration and Nationality Act, 8 U.S.C. § 1231, or prevailing case law. Indeed, the government's argument effectively would make pretrial detention automatic in every case involving a violation of 8 U.S.C. § 1326(a) and (b)(2)."). More importantly, to the extent it is Officer Graham's position, and the concomitant position of the United States Attorney, that he retains the ability at all times to simply take Blas into administrative custody, such position cannot be countenanced by this Court—particularly under the circumstances of this case—because while ICE may well

14

have the ability to take an alien like Blas back into administrative custody for the purpose of deporting him, "nothing permits ICE (or any other part of the Executive Branch) to disregard the congressionally-mandated provisions of the BRA by keeping a person in detention for the purpose of delivering him to trial [or any other court proceedings] when the BRA itself does not authorize such pretrial detention." *Trujillo-Alvarez*,900 F.Supp.2d at 1178; *see also id.* at 1179 ("What neither ICE nor any part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA.").[11]

> Two other regulations issued under the authority of the INA are relevant here. The first provides: "No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." 8 C.F.R. § 215.2(a). The second states that the departure from the United States of any alien shall be "deemed prejudicial to the interests of the United States" if, among other reasons, the alien is a party to "any criminal case . . . pending in a court in the United States[.]" 8 C.F.R. § 215.3(g). Thus, under existing INA regulations no alien shall depart from the United States while that alien is a defendant in a criminal case pending in a court in the United States. In this fashion, the Executive Branch by regulation has made the determination that a criminal proceeding takes priority over removal and deportation. This is also fully consistent with the statutory provisions of the INA.

*Id.* at 1178-1179 (footnote omitted).

---

[11] Indeed, Officer Graham's admission to this Court—on September 17, 2013—that ICE would have taken no action whatsoever had the undersigned found Blas to be a risk of flight and detained him under the Bail Reform Act firmly establishes that in this case ICE is attempting to do that which the court in *Trujillo-Alvarez* properly recognized it cannot do, namely circumvent the intent of the provisions of the Bail Reform Act by keeping Blas in detention for the purpose of delivering him to trial (and other court proceedings) when that Act does not authorize such pretrial detention, as previously determined by the undersigned (*see* Doc. 14).

Given the July 25, 2013 indictment of Blas and the subsequent activities of the government in again arresting Blas and "writing" him to this Court for all future criminal proceedings (*see* Docs. 18 & 21 ("Detainee will be retained in federal custody from initial appearance through final disposition of federal charges[.]")), the Executive Branch has made its choice in this case crystal clear, namely that the criminal proceeding against Blas takes priority over removal and deportation.[12] And although an argument could be made that the Executive Branch chose to give priority to the

---

[12] The Executive Branch's clear choice in this case certainly obviates any need for the undersigned to recommend that the criminal prosecution be dismissed. *Cf. Trujillo-Alvarez, supra,* 900 F.Supp.2d at 1181 ("[I]f Mr. Alvarez-Trujillo is returned to this district and released on the conditions previously imposed by Magistrate Judge Acosta by 5:00 p.m. Pacific time on Monday, November 5, 2012, then the pending criminal prosecution may proceed. If, however, he is not returned and released by that date and time, the pending criminal charge will be dismissed with prejudice."). However, the undersigned need note disagreement with the government's suggestion during the September 17, 2013 hearing that it can proceed on a dual criminal prosecution and deportation track, such that if deportation had been the chosen course the government could have kept the indictment open in case Blas illegally reentered this country again subsequent to his deportation. Such argument is not only contrary to case law, *see, e.g., Trujillo-Alvarez, supra,* but, as well, is contrary to the requirements of the Speedy Trial Act, *compare* 18 U.S.C. § 3161(a)-(c)(1) ("In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendar at a place within the judicial district, so as to assure a speedy trial. [] Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges. . . . In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.") *with* 18 U.S.C. § 3161(h)(3)(A) & (B) ("The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence: (3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness. (B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.").

criminal prosecution over deportation upon the coordinated institution of the criminal proceedings by the U.S. Attorney's Office and ICE Deportation Officer Graham (*see* Docs. 1 & 2), because this Court has never firmly established a position in illegal reentry cases and did not specifically direct Officer Graham (at the July 23, 2013 detention hearing) that he could not take Blas back into custody and deport him, in lieu of prosecution, the undersigned will not now hold a contempt hearing. *See Trujillo-Alvarez, supra,* 900 F.Supp.2d at 1180. However, as indicated above, the July 23, 2013 release order (Doc. 14) is reaffirmed and, pursuant to the previously imposed conditions, Blas was released from custody on September 17, 2013. Should the Executive Branch attempt to take Blas into custody again on the basis that the coordinated agencies now desire to deport him, in contravention to the clear priority those agencies have given to the criminal prosecution, *cf. Marinez-Patino, supra,* at *7 ("Defendant's prosecution is [] the result of both the United States Attorney's Office and ICE—two Executive Branch agencies—exercising their discretion in a coordinated effort to serve the public interest as they see it. To argue now, as the government does, that ICE's interest in deporting the defendant would suddenly trump the United States Attorney's interest in prosecuting the defendant ignores the cooperation (and exercise of discretion) that brought[] the defendant before this Court in the first place. It also presumes that ICE would immediately remove a defendant retained on bond and thus frustrate his criminal prosecution, when ICE itself has found that the departure of a defendant to a pending criminal proceeding is prejudicial to the interests of the United States."), it will become necessary to convene a contempt hearing.

**D.     Future Cases**. In all future cases involving a violation of 8 U.S.C. § 1326(a) and (b)(2), the Executive Branch agencies responsible for bringing such charges, that is, the United States Attorney's Office and ICE, will be required to inform the Court at the start of the detention hearing whether the criminal proceeding will take priority or whether priority will be given to removal and deportation. *Cf. Trujillo-Alvarez, supra,* 900 F.Supp.2d at 1169-1170 ("When an alien who has no lawful right to be in the United States is found in this country, ICE may remove and deport that person under the authority of the INA. Alternatively, if such an alien is believed to have committed a federal offense, including illegal reentry, ICE may choose to postpone the removal and deportation of that person while the U.S. Attorney's Office brings a criminal prosecution. Which pathway to take in any given case is a policy decision, and it is for the Executive Branch to determine."). Should the criminal proceeding be given priority by the coordinated agencies, the Court's decision regarding the government's motion for detention will control and in the event the defendant is released on conditions the sole avenue available for attacking that release order will be by appeal. *Compare id.* at 1170 ("When the Executive Branch decides that it will defer removal and deportation in favor of first proceeding with federal criminal prosecution, then all applicable laws governing such prosecutions must be followed, including the BRA. In such cases, if a judicial officer determines under the BRA that a particular defendant must be released pending trial because the defendant does not present a risk of either flight or harm, and the government has chosen not to appeal that determination, the Executive Branch may no longer keep that person in physical custody. To do so would be a violation of the

BRA and the court's order of pretrial release.") *with Marinez-Patino, supra*, at *1 ("[T]his Court does not construe the relevant statutory and regulatory scheme to require ICE to interfere with the ability of a coordinate arm of the Executive Branch to prosecute a charged criminal offense.").

## CONCLUSION

Based upon the foregoing, the undersigned **GRANTS** the defendant's motion to clarify status and effect of release order (Doc. 22), as more fully explained hereinabove. The contents of this order operate to **MOOT** the defendant's aforementioned appeal (Doc. 25).

**DONE** and **ORDERED** this the 20th day of September, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**